UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLY HECK, an individual; SARA LUND, an individual; and ALLY ORTANEZ, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>HEAVENLY COUTURE, INC., a California Corporation,<br><br>Defendant. | Case No.: 3:17-CV-0168-CAB-NLS<br><br>**ORDER RE MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MOTION TO COMPEL ARBITRATION**<br><br>[Doc. Nos. 27 and 28] |

This matter is before the Court on Defendant Heavenly Couture's motion to dismiss the First Amended Complaint ("FAC") [Doc. No. 27] and motion for an order compelling arbitration and/or immediately staying civil action [Doc. No. 28]. The motions have been fully briefed and the Court deems them suitable for submission without oral argument. For the reasons set forth below, the motion to dismiss the FAC is **GRANTED** without leave to amend, and the motion to compel arbitration and/or stay civil action is deemed moot and **DENIED** without prejudice.

**FACTUAL BACKGROUND**

Plaintiffs Carly Heck, Sara Lund, and Ally Ortanez (collectively "Plaintiffs") bring this collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"). Plaintiffs were non-exempt, hourly, in-store employees of Defendant Heavenly Couture, Inc., a California corporation which operates a chain of retail clothing stores.

Plaintiffs allege Defendant forced Plaintiffs to work uncompensated regular and overtime hours. Plaintiffs also allege Defendant failed to provide state-law-mandated meal and rest breaks, and that Defendant attempted to conceal such conduct by failing to provide accurate wage statements. Plaintiffs allege Defendant maintains a policy requiring employees to work off the clock during breaks and meal periods, and that Defendant failed to compensate Plaintiffs for overtime hours worked as required by FLSA and California law.

On October 11, 2016, Plaintiffs filed an action in the San Diego Superior Court, alleging various state law wage and hour claims against Defendant for: (1) failure to pay meal period premium pay; (2) failure to pay rest break premium pay; (3) failure to pay overtime wages; (4) failure to pay regular wages; (5) waiting time penalties; (6) violations of California's Unfair Competition Law; and (7) failure to provide accurate wage statements (the "state court action"). [Doc. No. 11-2, ¶2.] Defendant filed a motion to compel arbitration in the state court action on January 13, 2017. [Doc. No. 11-2, ¶3.] Prior to the hearing scheduled for February 10, 2017 on that motion, Plaintiffs dismissed the state court action without prejudice [Doc. No. 11-2, ¶¶3-5] and subsequently filed this action, which mirrored the state court action but added an additional cause of action under the FLSA (the "federal court action"). [Doc. No. 1.]

On March 9, 2017, Defendant filed a motion to dismiss the original complaint in the federal court action on the grounds that it failed to state a claim under the FLSA, and on the grounds that the state law claims do not arise from the same common nucleus of operative facts as Plaintiff's sole federal claim. [*See generally* Doc. No. 10-1.][1] On June 16, 2017, this Court granted the motion to dismiss with leave to amend as to the FLSA claim, and declined to exercise supplemental jurisdiction over Plaintiff's state law claims. [Doc. No. 22.]

On July 7, 2017, Plaintiffs filed the FAC with a single claim for an FLSA violation.

---

[1] Defendant also filed a motion to compel arbitration, which was denied as moot. [Doc. No. 22.]

[Doc. No. 23.] On July 25, 2017, Defendant filed a motion to dismiss the FAC [Doc. No. 27], and a motion to compel arbitration and/or immediately staying action [Doc. No. 28]. On August 11, 2017, Plaintiffs filed oppositions to the motions. [Doc. Nos. 29, 30.] On August 18, 2017, Defendant filed replies to the oppositions. [Doc. Nos. 32, 33.]

## ALLEGATIONS OF FAC

Most of the allegations of the FAC mirror those of the original complaint in the federal court action. In summary, Plaintiffs allege: Defendant unlawfully forced Plaintiffs to work uncompensated regular and overtime hours, cheating Plaintiffs out of premium pay for regular and overtime pay. [Doc. No. 23 at ¶4.] Additionally, Defendant exploited Plaintiffs by failing to provide legally mandated meal and rest breaks. *Id.* Defendant attempted to conceal its unlawful conduct by failing to provide accurate wage statements. *Id.* Defendant failed to pay all wages when due. *Id.*

Defendant refused to give Plaintiffs proper meal breaks. Defendant's uniform policy was for its employees to clock out for their meal periods and return to the sales floor to continue working. In other words, Defendant required Plaintiffs to work off the clock and during legally-mandated meal periods. [Doc. No. 23 at ¶14.]

Defendant also required Plaintiffs to work more than eight hours in each day, sometimes requiring that Plaintiffs work more than twelve hours in a day. Additionally, Defendant required Plaintiffs to work more than forty hours per week. Defendant did not adequately compensate Plaintiffs for overtime hours worked, as required under the FLSA. [Doc. No. 23 at ¶15.] Defendant required Plaintiffs to work more than forty hours per week. *Id.*

In addition, the FAC alleges as follows:

Defendant's uniform policy required that Plaintiffs worked through their legally-mandated meal breaks. Defendant also uniformly refused to compensate Plaintiffs for this time worked. Instead, Plaintiffs were forced to clock out for a meal period, return to the work floor, and help customers. Plaintiffs were not compensated for regular-pay work time because they worked off the clock during their meal breaks. For example, if an

3

employee was scheduled to work from 10:00 a.m. to 5:00 p.m., with a planned thirty-minute meal break, the number of *scheduled* hours would be six and one half. However, the employee would clock out for their meal break but return to work on the floor, thus working through their scheduled thirty-minute break, and causing the number of hours *actually* worked to become seven. Defendant never compensated Plaintiffs for these extra periods of time worked. [Doc. No. 23 at ¶18.]

Additionally, Plaintiffs were sometimes not compensated for overtime hours because the additional time worked—through their meal break—caused the number of hours they worked to exceed eight hours in one day (and sometimes twelve hours in one day). For example, if an employee was scheduled to work from 10:00 a.m. to 6:30 p.m., with a thirty-minute meal period built in, the number of hours *scheduled* to be worked would have been eight. However, because the employee is forced—by Defendant's explicit instruction and uniform policy—to work during the scheduled thirty-minute break, the number of hours actually worked becomes eight and one half. Defendant failed to ever pay for this extra half hour and never provided overtime pay for causing Plaintiffs' shifts to exceed eight hours of time worked. [Doc. No. 23 at ¶19.]

Defendant's uniform policy included instructions directed at each employee—including Plaintiffs—to falsify their time records in this fashion. In other words, Defendant required and instructed Plaintiffs and similarly situated employees to falsify their time records by clocking out for—but not actually taking—their meal breaks. [Doc. No. 23 at ¶20.]

During every workweek in [each] period [that each Plaintiff was employed], [Plaintiff] was required to follow Defendant's uniform policies mandating that she:

    a. Clock out for her legally-required meal period, but return to the floor to continue working through the meal period—during every shift she worked;

    b. Ensure that her time records inaccurately reflected that she did in fact take her meal period—during every shift she worked;

4

   c. Work more than eight hours in a day without receiving the statutorily
    required overtime pay—at least once a week; and

   d. Work more than twelve hours in a day without receiving the statutorily-
    required overtime pay—less than once a week but more than once a
    month." [Doc. No. 23 at ¶¶21-26.]

 Finally, [each Plaintiff] was explicitly instructed to follow the policies and procedures listed in the preceding paragraphs, through the duration of her employment. [Doc. No. 23 at ¶¶ 22, 24, 26.]

## LEGAL STANDARD FOR MOTION TO DISMISS

 To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) ("Conclusory allegations of law are insufficient to defeat a motion to dismiss"). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or . . . allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a [12(b)(6)] motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). Finally, "[l]eave to amend may . . . be denied for repeated failure to cure deficiencies by previous amendment." *Abragninin v. AMVAC Chem. Corp*, 545 F.3d 733, 742 (9th Cir. 2008)(citations omitted).

## ANALYSIS OF MOTION TO DISMISS

There are two issues with which the FLSA is concerned: (1) weekly overtime compensation (29 U.S.C. §207(a)(1)) and (2) payment of federal minimum wage (29 U.S.C. §206(a)).

A. Weekly Overtime Pay.

The FLSA's overtime compensation provision entitles covered employees to time and-a-half wages for hours worked in excess of 40 in a workweek. 29 U.S.C. §207(a)(1). Accordingly, to state a claim the plaintiff must allege that she worked more than 40 hours per workweek and did not receive the correct overtime pay for that week (or weeks).

The Ninth Circuit's decision in *Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir. 2014), clarified the pleading requirements set forth in *Iqbal* and *Twombly* in the context of an FLSA unpaid overtime claim. In *Landers*, the plaintiff alleged that he was not paid minimum wage and was "subjected to a 'piecework no overtime' wage system, whereby he worked in excess of forty hours per week without being compensated for his overtime." *Landers*, 771 F.3d at 640. The Ninth Circuit held that these allegations were inadequate, and that although "detailed factual allegations regarding the number of overtime hours worked are not required to state a plausible claim, . . . to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Id.* at 644-45. To that end, the Ninth Circuit affirmed dismissal of the complaint, finding that "Landers's allegations failed to provide sufficient detail about the length and frequency of his unpaid work to support a reasonable inference that he worked more than forty hours in a given week." *Id.* at 646 (internal quotations and brackets omitted).

In the original complaint in the federal court action, Plaintiffs' allegations failed to provide sufficient detail regarding the length and frequency of unpaid work. Plaintiffs asserted that "Defendant required Plaintiffs to work more than forty hours per week." [Doc. No. 1 at ¶16.] Plaintiffs then asserted that "Defendants did not adequately compensate

Plaintiffs for overtime hours worked…." *Id.* These are merely legal conclusions which recite the elements of a FLSA violation but do not meet the required burden under *Landers*.

The FAC fails to cure the defects of the original complaint. Once again, Plaintiffs' allegations fail to provide sufficient detail regarding the length and frequency of unpaid overtime work. Just as in the original complaint, Plaintiffs assert that "Defendant required Plaintiffs to work more than forty hours per week." [Doc. No. 1 at ¶16 and Doc. No. 23 at ¶15.] Also remaining unchanged, Plaintiffs assert that "Defendants did not adequately compensate Plaintiffs for overtime hours worked, as required under the FLSA." *Id.* These are merely legal conclusions which recite the elements of a FLSA violation. *Landers*, 771 F.3d at 644-45.

Plaintiffs have added some factual allegations in the FAC, including that Plaintiffs would:

"c. [w]ork more than eight hours in a day without receiving the statutorily required overtime pay—at least once a week; and

d. Work more than twelve hours in a day without receiving the statutorily-required overtime pay—less than once a week but more than once a month." [Doc. No. 23 at ¶¶21-26.]

However, Plaintiffs fail to show how working over eight or twelve hours in a day (once per week or once per month) caused them to work over forty hours in one week. For example, there is no allegation that Plaintiffs worked five or more days per week, such that working more than 8 hours in a day would cause them to exceed the weekly overtime. While the additional allegations in the FAC may bolster Plaintiffs' claims for daily overtime, which is a state law issue, they do not state an FLSA claim with regard to weekly overtime pay.

B. Minimum wage.

The FLSA's minimum wage provision entitles employees to a wage "not less than $7.25 an hour." 29 U.S.C. §206(a). To claim improper compensation under this provision, the plaintiffs must allege that the wages received fell below this statutory minimum.

7

However, the workweek as a whole, not each individual hour within the work week, determines an employee's "wages" for purposes of determining FLSA violations. *See* 29 C.F.R. §§776.4(a), 778.104. Thus, an employer's failure to compensate an employee for any particular hours worked does not necessarily violate the minimum wage provision of the FLSA. *See Dove v. Coupe*, 759 F.2d 167, 171 (D.C. Cir. 1985). If the total wage paid to an employee in any given workweek divided by the total hours worked that week equals or exceeds the applicable minimum wage, there is no FLSA violation. *Adair v. City of Kirkland*, 185 F.3d 1055, 1062 n. 6 (9th Cir. 1999)("even though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked"); *Balasanyan v. Nordstrom, Inc.*, 913 F.Supp.2d 1001, 1008 (S.D. Cal. 2012). *See also Sullivan v. Riviera Holdings Corp.*, No. 2:14-cv-00165-APG-VCF, 2014 WL 290303, at *1(D. Nev. May 29, 2015). To state a plausible minimum wage claim under this rule, therefore, a complaint must allege that the plaintiff's weekly wages fall below the statutory minimum. *Id.*

Here, there is no allegation whatsoever as to the amount of Plaintiffs' weekly or hourly wages. While Plaintiffs allege that some hours worked were unpaid, they do not provide any allegations to demonstrate that, when the unpaid hours are averaged with the paid hours in a given workweek, Plaintiffs are paid less than $7.25 per hour. As a result, Plaintiffs fail to state an FLSA minimum wage violation.

For example, in *Adair*, police officers alleged that they were not compensated for ten-minute briefings held before their shifts started. *Adair*, 185 F.3d at 1058. "The district court found that while the ten-minute briefings were compensable work time, attendance at the briefings was compensated through the officers' salary. The court then found that the City had complied with the FLSA. Because the salary, when averaged across the total actual number of hours worked, still paid more per hour than the minimum wage, the court found that the City complied with the FLSA's minimum wage requirements." *Id.* at 1058–59. When affirming the district court's ruling, the Ninth Circuit stated that, "[t]he district court properly rejected any minimum wage claim the officers might have brought by

finding that their salary, when averaged across their total time worked, still paid them above minimum wage." *Id.* at 1063.

In *Sullivan*, claimants alleged an FLSA violation because the defendant "require[d] them to work approximately 30 minutes off-the-clock per day to transport cash to and from the 'cashier's cage' before and after their scheduled shifts." *Sullivan*, 2014 WL 2960303, at *1. Defendant's motion to dismiss was granted because "the workweek as a whole, not each individual hour within the work week, determines an employee's 'wages' for purposes of determining FLSA violations." *Id.* "The [plaintiffs'] First Claim for Relief, for 'all hours worked,' misunderstands the FLSA. If their average weekly pay does not fall below $7.25 per hour, then the FLSA does not grant them a remedy for minimum wage violations. This is so regardless of whether they were actually paid for each hour worked. The [plaintiffs] have not pleaded sufficient facts for [the Court] to reasonably infer that their average hourly pay for any given workweek fell below the statutory minimum; indeed, they do not even plead their current hourly wage." *Id.* at 2.

Here, Plaintiffs allege that they were not paid for meal periods [Doc. No. 23 at ¶14], but they do not allege how much they were paid per hour or how many hours/days they worked per week. Thus, similar to ten-minute briefings worked by the officers in *Adair* or thirty-minute cash transport periods from *Sullivan*, Plaintiffs' allegedly uncompensated meal periods, without more, do not state a minimum wage violation. Plaintiffs have not shown how working uncompensated periods during their workday resulted in them receiving less than $7.25 per hour, on average, in a given workweek. There are simply no facts pleaded to allow the Court to reasonably infer that Defendant failed to pay minimum wage for all hours worked in a given workweek. Therefore, Plaintiffs fail to state a claim for an FLSA minimum wage violation.

**MOTION TO COMPEL ARBITRATION**

Given that the motion to dismiss is granted without leave to amend, the motion to compel arbitration is denied as moot.

## CONCLUSION

To state an FLSA overtime and/or minimum wage violation, Plaintiffs needed to show—with factual allegations—that they worked greater than forty hours per week or were not paid at least minimum wage for all hours worked in a week. This means Plaintiffs have the burden of pleading how often they worked greater than forty hours per week without overtime pay. Plaintiffs also have the burden of pleading how much they were paid and whether—averaged across all hours worked per week—this salary dropped below minimum wage. These factual allegations are simply absent from the FAC, notwithstanding this Court's clear directive in the previous order that such allegations were needed. Given that this is Plaintiffs' second attempt to state a claim under the FLSA, as well as the suspicious procedural history of this case, further amendment would be futile.

For the reasons set forth above, the motion to dismiss is **GRANTED WITHOUT LEAVE TO AMEND** and the motion to compel arbitration is **DENIED AS MOOT**. The Clerk of the Court shall **CLOSE** the case.

Dated: October 6, 2017

Hon. Cathy Ann Bencivengo
United States District Judge

10

3:17cv168-CAB-NLS